1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EMERY DENNIS SPENCER,

11              Petitioner,                    2: 09 - cv - 3388 - LKK TJB

12        vs.

13   JAMES YATES,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner, Emery Dennis Spencer, is a state prisoner proceeding with a *pro se* petition for

17   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a maximum

18   sentence of approximately fifty-four years in prison after a jury convicted him of multiple counts

19   of California Penal Code sections 288 (lewd and lascivious acts upon a minor), possession of

20   child pornography, and several related offenses.  Petitioner raises seven claims in this federal

21   habeas petition; specifically: (1) his convictions for lewd and lascivious acts upon a minor by use

22   of force were based on insufficient evidence ("Claim I"); (2) the trial court impermissibly

23   admitted testimony regarding a threat Petitioner made to "kill everybody involved in this thing"

24   after the preliminary hearing("Claim II"); (3) his right to confront the witnesses against him was

25   violated when the victim covered a portion of her face during her testimony ("Claim III"); (4) the

26   trial court erred in sentencing pursuant to California Penal Code section 667.6 ("Claim IV"); (5)

1    the trial court erred in imposing consecutive sentencing on all counts ("Claim V"); (6)

2    Petitioner's counsel was ineffective to the extent counsel failed to preserve sentencing issues for

3    appeal ("Claim VI"); and, (7) Petitioner's counsel was ineffective due to counsel's decision not

4    to present a defense to the prosecution's case ("Claim VII").[1]  For the reasons stated herein, the

5    federal habeas petition should be denied.

6                                I.  FACTUAL BACKGROUND

7           In 2004, Petitioner was convicted on various sexual offenses against his preteen neighbor,

8    and of possession of child pornography.  The specific facts giving rise to each of Petitioner's

9    claims in the instant federal habeas petition are set out more fully below in the discussion of each

10   claim.  Suffice it to say, Petitioner's constitutional claims center around three distinct portions of

11   Petitioner's trial.  First, as Petitioner was being led out of the courtroom after his preliminary

12   hearing he made a statement that he would "kill everybody involved in this thing."  A bailiff

13   heard Petitioner's declaration and the trial judge permitted the bailiff to testify regarding the

14   statement at trial.  Second, Petitioner finds constitutional error with regard to the victim's

15   testimony: Petitioner contends that the victim's testimony regarding the explicit details of their

16   sexual encounters did not produce sufficient evidence to support some of his convictions and that

17   the trial judge's decision to allow her, twelve-years-old at the time of trial, to testify with her

18   hand partly covering her face for a ten to fifteen minute portion of her lengthy testimony, so that

19   she would not have to look at Petitioner, violated Petitioner's right to confront the witnesses

20   against him.  Lastly, at the close of the prosecution's case, the defense also rested without calling

21   any witnesses or submitting any evidence into the record.

22   / / /

23   / / /

24   _____

25        [1]      In Respondent's Answer, Respondent admits that all of Petitioner's claims are
          exhausted.  Respondent, however, goes on to argue that several of the claims are unexhausted in
26        his brief.  Because Petitioner's claims lack merit, it is unnecessary to determine whether all of his
          claims have been exhausted.  *See* 28 U.S.C. § 2254(b)(2).

## II.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  *See* 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

In applying AEDPA's standards, the federal court must "identify the state court decision that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). "The relevant state court determination for purposes of AEDPA review is the last reasoned state court decision."  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting same claim rest upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts must conduct an independent review of the record to determine whether the state court clearly erred in its application of controlling federal law, and whether the state court's decision was objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The question under AEDPA is not whether a federal court believes the state court's determination

3

1   was incorrect but whether that determination was unreasonable—a substantially higher

2   threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

3   "When it is clear, however, that the state court has not decided an issue, we review that question

4   *de novo*." *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

5   545 U.S. 374, 377 (2005).

6                III.   ANALYSIS OF PETITIONER'S CLAIMS

7        1.  Claim I

8        In Claim I, Petitioner argues that there was insufficient evidence to support a guilty

9   finding with respect to the charge of lewd and lascivious acts upon a minor by use of force (also

10  referred to as "forcible child molestation").  Specifically, Petitioner contends that there is

11  insufficient evidence of force or duress as required by California Penal Code section 289(b)(1).

12       The Due Process Clause of the Fourteenth Amendment "protects the accused against

13  conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

14  crime for with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is

15  sufficient evidence to support a conviction, if "after viewing the evidence in the light most

16  favorable to the prosecution, any rational trier of fact could have found the essential elements of

17  the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he

18  dispositive question under *Jackson* is 'whether the record evidence could reasonably support a

19  finding of guilt beyond a reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir.

20  2004) (quoting *Jackson*, 443 U.S. at 318).  A petitioner for writ of habeas corpus "faces a heavy

21  burden when challenging the sufficiency of the evidence used to obtain a state conviction on

22  federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

23       A federal habeas court determines the sufficiency of the evidence in reference to the

24  substantive elements of the criminal offense as defined by state law.  *See Jackson*, 443 U.S. at

25  324 n. 16.  California law defines lewd and lascivious acts upon a minor as follows:

26  / / /

4

(a) Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constitution other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

(b)(1) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

Cal. Penal Code § 288. The California Court of Appeal stated the following in analyzing this

Claim on the merits:

Both in his motion for a new trial and in his statement in mitigation, the defendant challenged the sufficiency of the evidence to support the verdicts on two counts of forcible child molestation. In denying the motion, the court cited evidence that the victim kept telling the defendant to stop during both incidents, that the defendant pushed the victim's shoulders down (albeit gently) until she lay flat on the floor as he attempted intercourse, and that he hoisted the victim onto the bed for a second attempt at intercourse.

This accurately reflected the victim's testimony. Tired of the defendant's repeated requests for a sexual encounter, the 11-year-old victim agreed to disrobe while the defendant "[took] care of himself" in exchange for $20. She sat naked on the floor. He put his hands on her shoulders and pushed her gently to the floor. He then tried to penetrate her vagina. She told the defendant to stop. The victim had the impression the position hurt his back. He lifted her up by her underarms and sat her on the bed. She was shaking because she feared losing her virginity and getting pregnant. He had not threatened her at all. When the defendant again attempted to penetrate her, she told him more than once to stop because it hurt (though in fact she did not find his efforts painful). He got off of her, and she put her clothes back on.FN1

FN1. These offenses occurred at another residence before she moved to an apartment complex in June 2003 on Rio Linda Boulevard in which the defendant lived. Almost all of the rest of the crimes took place in their two apartments at that address before the defendant's arrest on June 20, 2003, after the victim's father caught the defendant literally with his pants down during an act of mutual oral

5

1    copulation.

2    "[I]n order for the statutory scheme of [Penal Code] section 288 to
     make sense, the Legislature must have intended that the 'force'
3    required to commit a forcible lewd act under subdivision (b) be
     substantially different from or substantially greater than the
4    physical force inherently necessary to commit a lewd act
     proscribed under subdivision (a)." (*People v. Griffin* (2004) 33
5    Cal.4th 1015, 1027, citing with approval *People v. Cicero* (1984)
     157 Cal . App.3d 465.)

6
     The modicum of "force" in the present case is certainly minimal
7    for the two counts. And yet in our decision in *Cicero*, we found all
     that was necessary was proof of a lewd act (rubbing their crotches)
8    against the will of the victims, occurring while the defendant
     carried them in what the victims believed was a game. (157
9    Cal.App.3d at pp. 470, 474, 475-476, 484-485.) In our decision in
     *People v. Pitmon* (1985) 170 Cal.App.3d 38, 48, there was
10   sufficient evidence of force where "defendant slightly pushed [the
     victim]'s back" each time the victim fellated him. In the present
11   case, the defendant twice changed the victim's position to facilitate
     his attempts at intercourse with her. This involved the application
12   of force different from and greater than that inherent in a lewd act
     itself. We cannot say that it is insubstantial.

13   Resp't's Answer, Ex. A (Hereinafter "Slip Op.") at 2-3.

14        Petitioner does not dispute the underlying factual basis of his conviction.  Rather,

15   Petitioner argues that under the facts as set forth in the Court of Appeal decision, Petitioner's

16   actions did not amount to force that was more than inherently necessary to commit a lewd act as

17   required by California Penal Code section 288(b)(1).  The California Court of Appeal interpreted

18   California law to the contrary, and such a determination is binding upon a federal court reviewing

19   a petition for habeas corpus.  *See Jackson*, 443 U.S. at 324 n. 16; *Bradshaw v. Richey*, 546 U.S.

20   74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state

21   law, including one announced on direct appeal of the challenged conviction, binds a federal court

22   sitting in habeas corpus." (citations omitted)).

23        Interpreting California law, The California Court of Appeal determined that "the 'force'

24   required to commit a forcible lewd act under subdivision (b) [must] be substantially different

25   from or substantially greater than the physical force inherently necessary to commit a lewd act

26

                                            6

1   proscribed under subdivision (a)."  Slip Op. at 3 (citing *People v. Griffin*, 33 Cal.4th 1015, 1027,

2   16 Cal.Rptr.3d 891, 94 P.3d 1089 (2004)) (other citations omitted).  The court went on to

3   conclude that changing a victim's position to facilitate intercourse "involve[s] the application of

4   force different from and greater than that inherent in a lewd act itself."  Slip Op. at 3; *see also*

5   *People v. Cicero*, 157 Cal.App. 3d 465, 204 Cal.Rptr. 582 (1984), *disapproved on other grounds*

6   *by People v. Soto*, 51 Cal.4th 229, 119 Cal.Rptr.3d 775, 245 P.3d 410 (2011) (rubbing crotches

7   during what victim thought was a game was enough for conviction under 288(b)); *People v.*

8   *Pitmon*, 170 Cal.App. 3d 38, 48, 216 Cal.Rptr. 221 (1985) (slightly pushing victims back).  Thus,

9   so long as there is evidence from which a jury could conclude Petitioner changed the victim's

10  position to facilitate intercourse, as the Court of Appeal concluded, Petitioner's convictions on

11  these counts are not constitutionally infirm.

12         Such evidence plainly exists in the record.  The victim testified at trial regarding the

13  incident and described for the jury how Petitioner "gently laid [her] down on the floor" and then,

14  later, "picked [her] up by [her] underarms and then put [her] on the bed."  *See* Rep.'s Trans. on

15  Appeal (hereinafter "Rep.'s Trans.") at 285, 289.  Petitioner fails to meet his heavy burden to

16  warrant granting federal habeas relief on this insufficiency of the evidence argument.

17         2.  Claim II

18         In Claim II, Petitioner asserts that the trial court impermissibly admitted testimony

19  regarding a threat Petitioner made to "kill everybody involved in this thing" after the preliminary

20  hearing because it was irrelevant and highly prejudicial.  The California Court of Appeal,

21  determining solely whether the admission of the statement was a violation of the California

22  Evidence Code, found as follows:

23              Following the preliminary hearing, a bailiff escorted the defendant
                to a holding cell. According to the bailiff's report, the defendant
24              asserted that he had a home worth more than enough to cover his
                bail ($1 million), and when he got out, he would "kill everybody
25              involved in this thing." When the bailiff noted that this would
                result in his return to jail without bail, the defendant replied that he
26              would hide out; "I'm not that stupid. I retired honorably from the

7

military. I didn't do this."

Defense counsel moved in limine to exclude these remarks from evidence, pointing out that far from owning a home worth in excess of a million dollars, the defendant was barely able to pay his $600 rent each month. Defense counsel argued that it would prejudice the defendant if the jury heard the amount of his bail. The court ruled that the bailiff could testify about the outburst if he omitted the reference to the amount of bail. It believed that "obviously" an innocent defendant would not express the need to kill witnesses and the representatives of the criminal justice system, and it would tailor the pattern instruction on evidence of flight to guide the jury in its consideration of the threat.FN2 The bailiff testified in accordance with the court's limitations on the offer of proof, noting that the defendant was "pretty agitated" when he made the threat.

> FN2. The court thus instructed the jury, "Threats to kill witnesses ... after the commission of a crime, or after [being] accused of a crime, [are] not sufficient in [themselves] to establish [a person's] guilt but are facts which, if proved, may be considered by you in the light of all other prove[n] facts in deciding whether the defendant is guilty or not guilty."

Renewing another ground of his motion for a new trial, the defendant contends the court erred in admitting the threat. He claims that its potential for prejudice exceeded its limited probative value. We disagree with the trial court that an innocent defendant "obviously" would not have any basis for wishing indiscriminate ill on all those involved in wrongly prosecuting him. (*See United States v. Copeland* (6th Cir.2003) 321 F.3d 582, 598.) Moreover, broad, unspecific enmity provides only an attenuated inference of a guilty conscience because it is not focused at any particular evidence that the defendant would seek to hide from the jury. (*See ibid.*) This sort of threat also poses the danger that the jury would impute a violent nature to the defendant, an extrajudicial matter beyond the jury's proper focus in a case (and thus the sort of prejudice with which a trial court must concern itself in ruling on admissibility). (*People v. Karis* (1988) 46 Cal.3d 612, 638.) However, the threat is not utterly without probative value-a jury could rationally infer it to be the product of a guilty defendant venting at being brought to justice. Nor do we find the trial court's resolution to be beyond the pale of reason, because the prejudice would not be extreme in the absence of any evidence that this was anything more than an impotent threat. Nothing prevented the defendant from urging the jury to apply its common sense in evaluating the circumstances under which he made the threat. We do not find any abuse of discretion in admitting the evidence or in instructing the jury on its potential use.

Slip Op. at 4-6.

A federal court may not collaterally review a state court evidentiary ruling unless it violates federal law, either by violating a specific constitutional provision or by infringing upon the due process right to a fair trial. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal habeas relief is not available for state law errors because the writ can only be granted for violations of the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The issue for a federal court is "whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991); *see Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983) ("[T]he Due Process clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."). As such, "[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Jonhson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67-68).

"Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established federal law,' as laid out by the Supreme Court." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing 28 U.S.C. § 2254(d)). "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process" and "it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant the issuance of the writ." *Id.* Thus, in *Holley v. Yarborough*, even when the Ninth Circuit concluded the admission of evidence "resulted in a trial that was fundamentally unfair and would warrant issuance of the writ under [Ninth Circuit] precedent," the court was powerless to grant the writ under AEDPA. *Id.* at fn. 2. Petitioner does not argue that the admission of his threat violates any specific constitutional provision, but rather that it was irrelevant and highly prejudicial. As such, Petitioner's claim is barred by the lack of

9

1  clearly established federal law on this issue, as determined by the Supreme Court of the United

2  States.

3      3.  Claim III

4      In his third claim for relief, Petitioner claims that his right to confront the witnesses

5  against him under the Sixth Amendment was violated when the victim partially covered her face

6  to obscure her view of Petitioner while testifying at Petitioner's trial.  In ruling on Petitioner's

7  claim, the California Court of Appeal stated as follows:

8          In his motion for a new trial, the defendant asserted that the victim
          violated his right to confront her because she had shielded the left
9          side of her face with her hand. In rejecting this argument, the court
          noted that the victim had been extremely emotional at the start of
10         her testimony. After the court had briefly excused the jury to allow
          the victim to compose herself, she brought her hand to her face to
11         block her view of the defendant when proceedings resumed. As she
          gained confidence, she ceased this after no more than 15 minutes in
12         the course of her lengthy testimony on direct and
          cross-examination. FN3 The jury had been able to view her
13         demeanor from the right side. In light of the numerous protections
          for child witnesses (which include testimony on closed-circuit
14         television), the court found that her gesture did not violate the
          defendant's right to confront her.

15
              FN3. Her testimony consumed three hours on the
16            first day and the entirety of the following court day.

17         The defendant renews this argument on appeal. In essence, he
          claims the trial court failed to make the necessary factual findings
18         that shielding the victim's face was necessary to prevent emotional
          trauma from the defendant's presence. (*Maryland v. Craig* (1990)
19         497 U.S. 836, 852-853, 855-856 [111 L.Ed.2d 666] (*Craig*);
          *People v. Murphy* (2003) 107 Cal.App.4th 1150, 1158 (*Murphy*)
20         [assuming state has a fundamental interest in protecting adult
          victim from trauma in testifying, reversible error to fail to hold
21         evidentiary hearing on use of one-way mirror to shield victim's
          view of defendant].)

22
          In the first place, the record amply supports an implied finding of
23         the necessity for the brief refusal to look at the defendant. (*People
          v. Sharp* (1994) 29 Cal.App.4th 1772, 1783 & fn. 4.) FN4 And
24         Sharp suggested, "the situation in this case is not materially
          different from one in which a witness might stare at the floor, or
25         turn her head away from the defendant" during her testimony,
          under which circumstances the defendant cannot compel the
26         witness to stare at him. (*Id.* at pp. 1780, 1781-1782 [prosecutor

                                          10

stood during questioning so that victim's gaze was away from defendant and toward jury; both jury and defendant could observe her demeanor].) In the present case, the court stated (in response to defense counsel's initial reference to the hand gesture for the record), "My impression is that the witness does not wish to view the defendant perhaps and I'm not going to necessarily order her to take her hand down. If that is what she needs to get through the testimony, I will allow that." If the defendant wanted a more extensive articulation of necessity, he should have requested it at the time. He has forfeited a fuller statement (and this could have been a reasonable tactical choice on the part of defense counsel, given the antecedent emotional distress that the witness had exhibited). The court did not violate his confrontation rights in permitting the gesture for a limited period of time.

> FN4. The refusal in *Murphy* to imply a finding could be the result of the court's doubts that an adult witness can be protected from trauma like a child; the extreme distress of the witness was manifest on the record. (107 Cal.App.4th at pp. 1152-1153.)

> In any event, face-to-face confrontation is at most a policy preference and not an indispensable element of the right to confront and cross-examine one's accusers. (*Craig*, *supra*, 497 U.S. at pp. 849-850.) We conclude the inability of the defendant to see the victim's face for a brief portion of her direct testimony is harmless beyond a reasonable doubt in light of his unhampered ability to cross-examine her.

Slip Op. at 6-8.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Supreme Court has interpreted the Clause to "guarantee[] the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (citations omitted); *see also California v. Green*, 399 U.S. 149, 174 (1970) (discussing the history, from Rome to England, of the right to confrontation); *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) (per curiam) ("[t]he Confrontation Clause provides two types of

protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination."); *Kirby v. United States*, 174 U.S. 47, 55 (1899) ("[A] fact which can be primarily established only by witnesses cannot be proved against an accused . . . except by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases.").  The right to such a face-to-face confrontation, however, is not absolute and it is not "an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." *Craig*, 497 U.S. at 849-50.

In *Maryland v. Craig*, *supra*, the Supreme Court had an opportunity to outline the contours of the face-to-face requirement within the context of a victim of child molestation testifying against the accused molester.  There, the trial court, following Maryland law, permitted a six-year-old girl to testify via one-way closed circuit television from a separate room.  *Id.* at 841.  The prosecution and defense counsel, who remained in electronic communication with the defendant, withdrew to the separate room where they could examine and cross-examine the witness while the defendant, judge, and jury remained in the courtroom and watched the questioning via television.  *Id.* at 841-42.  Objections could be made and ruled upon as if the witness was testifying in the courtroom.  *Id.* at 841.  Under Maryland law, such procedure could only be invoked after a finding by the trial judge that "the testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate."  *Id.* (citations omitted).  The Supreme Court upheld the procedure as constitutional, holding that, "if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant."  *Id.* at 855.  In more general terms, "a defendant's right to confront accusatory

witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.

In the present case, no specified procedures, such as a closed-circuit television, were used to prevent the victim from seeing Petitioner during her testimony. Rather, the victim, who was twelve-years-old at the time of the trial, without prompting from the prosecution, chose to partially cover her own face during a short, ten to fifteen minute portion of her lengthy testimony. The court presumed this was because she did not want to view Petitioner. *See* Rep't's Trans. at 280. This was after the victim had indicated that she preferred referring to Petitioner as "the defendant" rather than by his name, which she knew, and also after the court took a brief recess after the victim began crying on the stand. *See id.* at 276, 277. The direct objection and the court's response were as follows:

> MS. KENT [Defense Counsel]: Your Honor, I need to interject here very politely that I want it noted for the record the child is holding the hand over her face. I cannot see about a quarter of her face.
>
> THE COURT: That is noted for the record. My impression is that the witness does not wish to view the defendant perhaps and I'm not going to necessarily order her to take her hand down. If that is what she needs to get through the testimony, I will allow that. I don't know if it's hindering her to testify in any matter, but it's noted for the record.

*Id.* at 280.

Later, when Petitioner moved to dismiss on Confrontation Clause grounds, the court described the victim's testimony as follows:

> There is also a motion under Penal Code 1181 Sub (5) to dismiss this case based on the defendant's denial of the defendant's right to confront the witness under the Sixth Amendment. And essentially counsel's argument alleges that when [the victim] was allowed to shield her face during her testimony, that that violated the defendant's confrontation rights.
>
> Now, it's clear that when [the victim] first began to testify, that she was quite emotional. In fact, um, very early-on into her testimony

13

she began crying.  She became emotional.  And rather than continue with the testimony under those circumstances, the court elected to excuse the jury from the courtroom for [a] brief period of time in order that the witness may compose herself.

And when the jury returned, I did note and counsel noted, that [the victim] took her left hand and placed it on the left side of her face. And it was clear the reason why she was doing that, because to the left of [the victim] was the defendant.  She essentially did not want to look at the defendant or have him see her.  And the right side of [the victim]'s face was open to the face which was to the right of [the victim] (sic).  In fact, on several occasions I did note that she turned and actually looked at the jury.

Um, so it was clear that – that the jury actually was able to see [the victim].  And I think everyone pretty much understood what she was doing, trying to do or the image that she was trying to get out of her face.  Um, and no one – no one ever complained about it insofar as the jury being able to see her.  Because quite frankly, you could see her she put her hand over her left eye so she merely wouldn't see the defendant.

And I will add this.  It was for a brief period of time.  It wasn't as though she did it during a lengthy portion of the testimony.  It was for a brief – very brief period of time.  And my – my estimation after she had built up some confidence or became somewhat comfortable with the questions and answers, she took her hand away from her face.  It wasn't – I don't know.  The prosecutor suggested it was 5 to 10 minutes.  I don't know if it was five to 10 minutes, but I wouldn't necessarily dispute that.  I think at most it would have probably been about 15 minutes.  And considering the length of time that she was actually on the stand subjected to cross-examination, um, that was a very, very short period of time.

And there was an occasion when [defense counsel] did remark that she could not hear the witness, and that was true.  Because her hand was actually over her mouth.  And, in fact, on several occasions she would stick her hand up near her mouth independent of putting her hand up near her face and I would have to tell her to take her hand away from her mouth. So to that extent she did – the witness did comply.  She removed her hand and the question and answering continued.

And quite frankly, not only was she subjected to, you know, direct examination for an extended period of time.  She was subjected to cross-examination for – for an extended period of time.  And – and, you know, counsel could have very well asked her the question why she had her hand over her face.  But I think it was pretty obvious why I think she did.

And quite frankly, it wasn't – it wasn't something that rise – rises

14

1   to the level of – of granting a new trial motion certainly. . . .

2   *Id.* at 1125-28.

3   In determining the necessity of non-face-to-face testimony, the Supreme Court has

4   "decline[d] to establish, as a matter of federal constitutional law, any such categorical evidentiary

5   prerequisites," such as a requirement that a court must observe a child's behavior in the

6   defendant's presence, before face-to-face testimony will not be required.  *Craig*, 497 U.S. at 859-

7   60.  "The requisite finding of necessity must of course be a case-specific one: The trial court

8   must hear evidence and determine whether use of the [non-face-to-face] procedure is necessary to

9   protect the welfare of the particular child witness who seeks to testify."  *Id.* at 855 (citations

10  omitted).  At Petitioner's trial, the trial court made a specific factual finding with regard to the

11  victim's ability to testify, concluding that she had chosen to cover her face so that she would not

12  have to look at Petitioner.  The Court of Appeal reached a reasonable conclusion when it

13  determined that the requisite necessity had been shown in the trial court: The jury had to be

14  removed once due to the victim's emotional testimony on the stand, and, according to the trial

15  judge, "it was clear" that the reason the victim was covering her face was to avoid having to look

16  at the defendant in order to facilitate her testimony.

17  Furthermore, the reliability of the victim's testimony was assured regardless of the fact

18  that she placed her hand over her face.  *See id.* at 851; *Green*, 399 U.S. at 158 .  Unlike *Craig*,

19  where the victim was testifying via closed-circuit television, here the victim testified in open

20  court, in direct view of the jury.  The victim only placed her hand over her eye for not more than

21  fifteen minutes, which represents only a small portion of her time on the witness stand over the

22  course of two trial days.  The victim was also subject to extensive and uninhibited cross-

23  examination–a true hallmark of the adversary process and the Sixth Amendment.  *See, e.g.*,

24  *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (per curiam) ("[T]he Confrontation Clause is

25  generally satisfied when the defense is given a full and fair opportunity to probe and expose

26  [testimonial] infirmities through cross-examination."); *Green*, 399 U.S. at 158 (cross-

15

examination is "the greatest legal engine ever invented for the discovery of truth." (internal quotation marks and footnote omitted)).  Furthermore, the victim testified under oath, "impressing [her] with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." *Green*, 399 U.S. at 158; *see* Rep't's Trans. at 269, 275.  The trial court's decision to permit the victim to partially cover her face during her testimony is "a far cry from the undisputed prohibition of the Confrontation Clause: trial by *ex parte* affidavit or inquisition." *Craig*, 497 U.S. at 851.  The Court of Appeal's determination that Petitioner's Sixth Amendment right to confront the witnesses against him was not violated is reasonable under *Craig* and the specific facts of this case.  Petitioner is not entitled to relief on this claim.

4.  Claims IV and V

In Claims IV and V, Petitioner raises issues under California's sentencing laws. Specifically, in Claim IV Petitioner alleges that the California courts erred in sentencing him to consecutive terms under California Penal Code section 667.6(d), which provides that "[a] full, separate, and consecutive term shall be imposed for each violation . . . if the crimes involve separate victims or involve the same victim on separate occasions."  In Claim V, Petitioner alleges that the trial court erred, under California law, in imposing consecutive sentences on all counts.[2]

"[T]he question to be decided by a federal court on petition for habeas corpus is not

---

[2]      Petitioner does not raise in this federal habeas petition his possible claim under *Cunningham v. California*, 549 U.S. 270 (2007), that the imposition of the upper term sentence on counts 1-3 violated his right to a jury trial under the Sixth Amendment as the jury did not make specific factual findings which would support the imposition of an upper term sentence.  In Petitioner's second appearance before the California Court of Appeal, the court determined that, while the jury had not made the specific factual finding necessary for an upper term sentence, the error was harmless because the court concluded "beyond a reasonable doubt" that the jury would have found at least one aggravating circumstance.  Resp't's Answer, Ex. B, at 8-9; *see Washington v. Recuenco*, 548 U.S. 212, 221 (2006) (holding that sentencing errors are subject to harmless error analysis); *Butler v. Curry*, 528 F.3d 624, 648 (9th Cir. 2008) (applying harmless error to *Cunningham* claim); *Castillo v. Clark*, 610 F.Supp.2d 1084, 1124-26 (C.D. Cal. 2009) (discussing harmless error analysis in context of a *Cunningham* claim).

16

whether the state sentencer committed state-law error. . . .  Rather, the federal, constitutional question is whether [the sentence] is 'so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation.'" *Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  "The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (citing *Ramirez v. Arizona*, 437 F.2d 119, 120 (9th Cir. 1971)); *see also Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (refusing to inquire into state sentencing law on a petition for habeas corpus).

Petitioner makes no argument before this court, nor did he argue before either the trial court or the California Court of Appeal, that his sentence is unconstitutional under either the Eighth Amendment or the Due Process Clause. His argument is solely based on violations of California sentencing law, and, therefore, Petitioner's claims cannot be reviewed by a federal court on a petition for habeas corpus.  The California Court of Appeal, applying California's sentencing law, determined that Petitioner's sentence was in conformity with California law. Petitioner is not entitled to relief on either Claim IV or V.

5. Claims VI and VII

In Claims VI and VII, Petitioner contends that his trial counsel failed to provide effective assistance in his defense.  The Sixth Amendment guarantees effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel.  First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See id.* at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance.  *See id.*

Second, a petitioner must affirmatively prove prejudice.  *See id.* at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine the confidence in the outcome."  *Id.*  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697).  When analyzing a claim for ineffective assistance of counsel where a state court has issued a decision on the merits, a habeas court's ability to grant the writ is limited by two "highly deferential" standards.  *Premo v. Moore*, __ U.S. __, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011).  "When § 2254(d) applies," as it does here, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

a.   Claim VI

In Claim VI, Petitioner contends that his trial counsel was ineffective for failing to preserve sentencing issues for appeal.  Contrary to Respondent's assertion, Petitioner raised this argument on direct appeal; however, the California Court of Appeal did not address the issue, as it ruled on the merits on all of Petitioner's sentencing claims.  *See* Lodged Doc. No. 1 (Appellant's Opening Brief), at 80; Slip Op. at 14.  In pertinent part, the Court of Appeal stated as follows:

> As for the second contention [that the evidence is not sufficient to support consecutive sentences on all felony counts], to the extent we understand it, this was not part of the defendant's objections in the trial court and is therefore forfeited.  Moreover, it amounts to a challenge to the sufficiency of the evidence to support the jury's verdicts, one which must fail because it acknowledges that the victim's testimony supports the number of convictions occurring at separate times.  We therefore reject the claim.

Slip Op. at 14 (footnote omitted).  Regardless of Petitioner's trial counsel's failure to maintain

the objection for appeal, the Court of Appeal reached the merits of the issue and concluded that Petitioner's claim was without merit.  As such, Petitioner cannot show the necessary prejudice to succeed on a claim for ineffective assistance of counsel, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  If Petitioner's counsel would have properly objected, the result would be the same as the Court of Appeal denied Petitioner's claim on the merits. Petitioner is not entitled to the writ of habeas corpus on this Claim.

b.  Claim VII

In Claim VII, Petitioner contends that his trial counsel was deficient for failing to put on a defense to the prosecution's case.  Petitioner did not raise this claim on direct appeal. Instead, he petitioned the California Supreme Court for a writ of habeas corpus on such grounds.  Lodged Doc. No. 13 (Petition for Writ of Habeas Corpus).  The California Supreme Court summarily denied Petitioner's petition, which amounts to a decision on the merits.  Lodged Doc. No. 12; *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 785, 178 L.Ed.2d 624 (2011) (holding that 28 U.S. C. § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits).

Where a state court provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether the state court was objectively unreasonable in its application of clearly established federal law.  *See Musladin v. Lamarque*, 555 F.3d 830, 835 (9th Cir. 2009); *see also Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000), *overruled on other grounds*, *Lockyer v. Andrande*, 538 U.S. 63 (2003).  Performing such a review, the conclusion is inescapable that a fair minded jurist could agree on the correctness of the California Supreme Court's decision.  *See Harrington*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The burden is on Petitioner to affirmatively prove prejudice.  *Strickland*, 466 U.S. at 693.  Petitioner does not provide any substance as to what his defense counsel should or could have done to bolster Petitioner's defense.  There is no claim that

a witness should have been called but was not, nor that any exculpatory evidence could have been presented in any way.  In Petitioner's petition before the California Supreme Court, he did claim that his counsel should have called a witness, Ms. Tiller, who "would have testified that the prosecution's witness was lying about the facts of the case."  Lodged Doc. No.13 at 3.  This is merely a conclusory allegation.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) ("the petition is expected to state facts that point to a 'real possibility of constitutional error'" (quoting *Blackledge v. Allison*, 431 U.S. 63, 75 n. 7 (1977)) (other citations omitted)); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." (citing *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir.1970))); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1989) (cannot show ineffective assistance of counsel for failure to call a witness where there is no indication of what witness would have testified to).  As such, Petitioner cannot show that he was prejudiced by counsel's decision to rest without calling any witnesses or presenting any evidence. Petitioner is not entitled to relief on Claim VII.

## IV.  CONCLUSION

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the event he elects to

file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  May 26, 2011

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE